IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


LUTHER JONES,                              :

    Plaintiff,                         :


      vs.                             :
                        Case No. 3:08CV358

NEENAH PAPER, LLC aka NEENAH               :
PAPER SALES, INC. (fka FOX RIVER               JUDGE WALTER HERBERT RICE
PAPER COMPANY),                            :

    Defendant.                         :

---

DECISION AND ENTRY OVERRULING, WITHOUT PREJUDICE TO
RENEWAL, PLAINTIFF'S MOTION FOR LEAVE TO FILE
IDENTIFICATION OF LAY WITNESSES OUT OF TIME (DOC. #21);
OVERRULING, IN PART, AND SUSTAINING, IN PART, DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DOC. #23); AND
OVERRULING DEFENDANT'S MOTION TO DISMISS (DOC. #28);
CONFERENCE CALL SET

---

The Plaintiff, Luther Jones, began his employment with Defendant, Neenah

Paper, LLC ("Neenah"), in December 1997.  He worked in various capacities as a

laborer in Defendant's paper mill, until his termination, in March 2007.  Jones

initiated this litigation, claiming that Neenah had discriminated against him on the

basis of his race, in various ways during his employment and also in terminating

him. Doc. #3 (Am. Compl.).  Jones brings his race discrimination claim pursuant to

Ohio Revised Code § 4112.02. Id.

The parties have filed three Motions, which are presently before the Court.

The Plaintiff has filed a Motion for Leave to File Identification of Lay Witnesses Out of Time (Doc. #21), to which the Defendant has filed an objection (Doc. #22). The Defendant filed a Motion for Summary Judgment (Doc. #23), arguing that Jones was required to arbitrate his complaints pursuant to a binding collective bargaining agreement, and a Motion to Dismiss for lack of prosecution (Doc. #28). The Plaintiff has responded to the Motion for Summary Judgment (Doc. #26), but not to the Motion to Dismiss.

The Court will begin with a brief overview of the pertinent facts. It will then proceed with an analysis of the Motions before it, by first considering the merits of the Defendant's Motion for Summary Judgment, and then turning to an analysis of the Plaintiff's Motion for Leave to File Identification of Lay Witnesses Out of Time and the Defendant's Motion to Dismiss.

I.    Facts

Neenah employed Jones, in various laborer capacities, from 1997 to 2007. Doc. #25 at 25, 30 (Jones Dep. at 98, 117). Jones was president of the local union from approximately 2002-2006. Id. at 30 (Jones Dep. at 117). While employed by Neenah, Jones was subject to a Collective Bargaining Agreement ("CBA" or "Agreement"). Id. The first portion of the CBA that is relevant to the present dispute is Article VI, which pertains to "Grievances and Arbitration", and

reads as follows:[1]

> The Union recognizes the need for uninterrupted production and the Company recognizes the need for adjusting <u>complaints arising out of the application or interpretation of the specific items of this Agreement</u>.

> In furtherance of such recognition by the parties, <u>the following procedure is established for adjusting such employee complaints</u>:

> [Sets forth the details of the 4-step procedure.]

> If the Mill Manager and International Union Representative are unable to reach a satisfactory settlement of the complaint, the Mill Manager shall give the Company's final answer within ten (10) working days of the fourth step meeting. The grievance may then be referred to arbitration.

> The parties agree to abide by the time limits prescribed herein and any extensions that are mutually agreed upon and reduced to writing.

> If the grievance has not been satisfactorily disposed of and is to be pursued further, the Union must serve notice upon the Company in writing within thirty (30) working days following completion of the grievance procedure set forth in Section 4 of this Article to request to arbitrate. Within ten (10) working days the Company and Union shall attempt to agree upon the issue or issues involved. <u>If the parties are unable to agree upon the issue or issues involved, such dispute shall then be referred to an arbitrator</u>. . . .

Doc. #26-1 at 4-5 (emphasis added). Also pertinent is Article XXV, the "Non

Discrimination Clause", which reads as follows:

---

[1]Both parties have put copies of the CBA on the record, yet neither has authenticated the same (or pointed out to the Court where they have done so). Doc. #23-3 at 21-37 (CBA placed on the record by Defendant); Doc. #26 (CBA placed on the record by Plaintiff). Neither party disputes the authenticity of the Agreement and both copies appear to be the same. Therefore, the Court will rely on the copy filed by the Plaintiff when ruling herein.

3

It is the intent and purpose of the Company and Union that there should be no discrimination between employees with respect to compensation, terms and conditions of employment[,] because of race, color, religion, sex, age, national origin, marital status, disabilities, veterans status or any other protected class or protected status as defined <u>by local Municipal, State or Federal Laws</u>.

<u>Id.</u> at 13 (emphasis added).

Prior to instigating the present lawsuit, Jones filed numerous grievances, alleging discrimination both during his employment and as a result of his termination. All said grievances culminated prior to arbitration. A summary of those grievances follows:

- <u>December 2001</u>: Alleges violation of Article XXV, of the CBA. Specifically alleges that Jones was sent home from job after argument with another employee, yet other employee not disciplined. Grievance denied through third step of grievance process. Doc. #26-3 at 1 (Grievance #9-85-12-01).

- <u>August 2002</u>: Alleges violations of Article XXV, among others. Specifically alleges denial of personal holiday due to race. Second step entry notes, "[a]fter reviewing personal days practices mill wide, we will grant you your personal day off as requested." <u>Id.</u> at 6 (Grievance #14-99-8-02).

- <u>March 2005</u>. Alleges violations of Article XXV, among others. Specifically asserts that Jones was wrongfully sent home early. After previous findings of no violation, fourth step entry notes Jones withdrew grievance. <u>Id.</u> at 3 (Grievance #6-130-3-05).

- <u>March 2005</u>. Alleges violations of Article XXV, among others. Specifically alleges discriminatory write up. After previous findings of no violation, fourth step entry notes Jones withdrew grievance. <u>Id.</u> at 4 (Grievance #5-129-3-05).

- <u>March 2005</u>. Alleges violations of Article XXV, among others. Specifically alleges degrading and discriminatory behavior apparently on part of supervisor. After previous findings of no violation, fourth

step entry notes Jones withdrew grievance. <u>Id.</u> at 5 (Grievance #7-131-3-05).

- <u>September 2005</u>:  Alleges violations of Article XXV, among others. Specifically alleges wrongful receipt of suspension for leaving without permission and improper behavior on part of white supervisor. Grievance denied through fourth step of grievance procedure. <u>Id.</u> at 2 (Grievance #19-143-9-05).

- <u>October 2005</u>:  Alleges violations of Article XXV, among others.  No specifics noted.  (Grievance Report says "see attached", but there is nothing attached.)  As the fourth step entry, the company offered additional training. <u>Id.</u> at 9 (Grievance #24-148-10-05).

- <u>November 2006</u>:  Alleges violations of Article XXV, among others. Specifically asserts discriminating treatment in training and rotational assignments.   General comment indicated finding of no violation. <u>Id.</u> at 8 (no grievance number noted).

- <u>March 2007</u>:  Alleges violations of Article XXV, among others. Specifically alleges wrongful termination.  Grievance denied through fourth step of grievance procedure. <u>Id.</u> at 10 (Grievance #3-168-3-07).

In his Amended Complaint, Jones also alleges various other incidents of racial discrimination (e.g., denial of additional training opportunities, failure to promote, failure to move to a requested shift, discriminatory pay rates), for which he did not file grievances. Doc. #3 ¶¶ 8-11.

II.    <u>Motion for Summary Judgment</u>

A.    <u>Summary Judgment Standard</u>

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>

v. Catrett, 477 U.S. 317, 322 (1986). The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

6

affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to

summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

B. Analysis of Motion for Summary Judgment

In its Motion for Summary Judgment, the Defendant asserts that Jones's union waived his rights to assert his claim in a judicial forum, by means of the CBA's mandatory arbitration language. Jones, on the other hand, argues that the terms of the CBA are not sufficiently clear to constitute a waiver of his right to proceed judicially.

The Supreme Court recently resolved the question of whether a union may waive a covered employee's right to a judicial forum for resolution of certain federal statutory claims, which had been left open by earlier Supreme Court decisions. In 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456, 1474, 173 L. Ed. 2d 398 (2009), the Supreme Court held that a union may bind a covered employee to arbitration for a statutory antidiscrimination claim, so long as the arbitration clause in question "clearly and unmistakably" mandates arbitration of said claim.[2]

_____

[2]The Penn Plaza Court recognized that "all statutory claims may not be appropriate for arbitration," but parties will be held to a bargain to arbitrate "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Penn Plaza, 129 S. Ct. at 1465 (quoting Gilmer

Based on this guidance, this Court's task is to review the terms of the CBA to determine if that document "clearly and unmistakably" requires arbitration of Jones's discrimination claim. In so doing, the Court first notes the Sixth Circuit's instruction that "when interpreting a collective bargaining agreement, a court must start with the 'explicit language'" and that "[g]eneral principles of contract interpretation should guide a district court's interpretation of the explicit language." Tackett v. M&G Polymers, USA, LLC, 561 F.3d 478, 489 (6th Cir. 2009) (citing Int'l Union v. Yard-Man, 716 F.2d 1476, 1479 (6th Cir. 1983)).

The Court will now turn to a review of the collective bargaining language considered by the Supreme Court, in Penn Plaza. That clause provided as follows:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any other characteristic protected by law, including, but not limited to, claims made pursuant to Title VII

---

v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26). It also recognized that "nothing in the text of the ADEA or its legislative history explicitly precludes arbitration."Id. (quoting Gilmer, 500 U.S. at 26-27).

Because there is no dispute in the present case that Title VII precludes a waiver of judicial remedies, and other courts have recognized that Title VII discrimination claims can be subject to mandatory arbitration by collective bargaining agreements, this Court will not explore this issue. E.g., Johnson v. Tishman Speyer Props., L.P., 2009 U.S. Dist. LEXIS 96464, *7 (S.D.N.Y. Oct. 16, 2009) (finding Title VII race discrimination subject to mandatory arbitration procedure in collective bargaining agreement); Dunnigan v. City of Peoria, 2009 U.S. Dist. LEXIS 71797, *6 (C.D. Ill. July 15, 2009) ("If the collective bargaining agreement does not "clearly and unmistakably" require arbitration of Plaintiff's Title VII claims, then Plaintiff's Title VII claims are not precluded here, absent some sort of agreement by Plaintiff to arbitrate those claims."); Shipkevich v. Staten Island Univ. Hosp., 2009 U.S. Dist. LEXIS 51011, *5 (E.D.N.Y. June 16, 2009) ("Although 14 Penn Plaza was an ADEA case, the Court's reasoning applies equally well to Title VII claims.").

of the Civil Rights Act, the Americans with Disabilities Act, the [ADEA], the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and arbitration procedures (Articles V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

Penn Plaza, 129 S. Ct. at 1461. Without discussion, the Court concluded that this language "explicitly stated" that the parties had agreed to arbitrate a statutory ADEA claim and, thus, it "clearly and unmistakably requires respondents to arbitrate the age-discrimination claims at issue in this appeal."[3] Id. at 1465, 1466.

In its Penn Plaza opinion, the Supreme Court distinguished (but did not overrule) several predecessor cases (e.g., Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 82, 142 L. Ed. 2d 361, 119 S. Ct. 391 (1998); Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 67 L. Ed. 2d 641, 101 S. Ct. 1437 (1981); Alexander v. Gardner-Denver Co., 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974)), which had created some confusion about whether a union could waive a covered employee's right to a judicial forum for the resolution of a statutory claim. In so doing, the Court observed that the arbitration provisions in

---

[3]In the lower courts, the Penn Plaza respondents did not raise the issue of whether the contract language clearly and unmistakably required them to arbitrate their ADEA claims. Penn Plaza, 129 S. Ct. at 1473. "To the contrary, respondents acknowledged on appeal that the CBA provision requiring arbitration of their federal antidiscrimination statutory claims 'is sufficiently explicit' in precluding their federal lawsuit." Id. Thus, the question presented to the Court was not whether the collective bargaining agreement language was clear and unmistakable, but rather "whether a provision in a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate claims arising under the [ADEA] is enforceable." Id. at 1461.

question in those cases were not sufficiently clear and unmistakable, on the subject of whether the parties had agreed to arbitrate their statutory claims, and specifically noted that (at least in Gardner-Denver and Barrentine) the applicable arbitration provisions "did not expressly reference the statutory claim at issue." Penn Plaza, 129 S. Ct. at 1468 (opining that the employees in Gardner-Denver and Barrentine "had not agreed to arbitrate their statutory claims").  Therefore, in order to resolve the present dispute, this Court finds it instructive to examine some of the provisions in the aforementioned cases, which are similar to the provisions presently before the Court.

In Wright v. Universal Maritime Service Corporation, the plaintiff brought suit claiming a violation of the Americans with Disabilities Act ("ADA"). Wright, 525 U.S. 70.  The question before the Supreme Court was whether the collective bargaining agreement required the plaintiff to arbitrate his ADA claim.  The Court reflected on the pertinent language of that agreement as follows:

> [The CBA provides that] "[m]atters under dispute which cannot be promptly settled between the Local and an individual Employer shall, no later than 48 hours after such discussion, be referred in writing covering the entire grievance to a Port Grievance Committee . . . ."  If the Port Grievance Committee . . . cannot reach an agreement within five days of receiving the complaint, then the dispute must be referred to a District Grievance Committee . . . .  The CBA provides that a majority decision of the District Grievance Committee "shall be final and binding."  If the District Grievance Committee cannot reach a majority decision within 72 hours after meeting, then the committee must employ a professional arbitrator. . . .
>
> Finally, . . .  the CBA states:  "It is the intention and purpose of all parties hereto that no provision or part of this Agreement shall be

violative of any Federal or State Law."

Id. at 72-73.  In finding that this language was not sufficiently explicit to constitute a waiver of a right to judicial relief, the Court opined that the "arbitration clause is very general, providing for arbitration of 'matters under dispute,' which could be understood to mean matters in dispute under the contract." Id. at 80.  And, further, "the remainder of the contract contains no explicit incorporation of statutory antidiscrimination requirements.  (Indeed, it does not even contain, as did the CBAs in . . . Gardner-Denver, its own specific antidiscrimination provision.)"[4]

Id.

The Court now turns to a consideration of Alexander v. Gardner-Denver Co., wherein the Supreme Court discussed the portion of the collective bargaining agreement that is similar to the present agreement.

> Under Art. 4 of the collective-bargaining agreement, the company retained "the right to hire, suspend or discharge [employees] for proper cause."  Article 5, § 2, provided, however, that "there shall be no discrimination against any employee on account of race, color, religion, sex, national origin, or ancestry," and Art. 23, § 6 (a), stated that "no employee will be discharged, suspended or given a written warning notice except for just cause."  The agreement also contained a broad arbitration clause covering "differences aris[ing] between the

---

[4]Also at issue in Wright was a "Longshore Seniority Plan," which provided, in part, as follows:  "Any dispute concerning or arising out of the terms and/or conditions of this Agreement, or dispute involving the interpretation or application of this Agreement, or dispute arising out of any rule adopted for its implementation, shall be referred to the Seniority Board." Wright, 525 U.S. 73.  As it did with the collective bargaining agreement language, the Court concluded that this language did not clearly and unmistakably waive employees' rights to a judicial forum, given that it "contains no antidiscrimination provision; and it specifically limits its grievance procedure to disputes related to the agreement." Id. at 81-82.

Company and the Union as to the meaning and application of the
provisions of this Agreement" and "any trouble aris[ing] in the plant."
Disputes were to be submitted to a multi-step grievance procedure,
the first four steps of which involved negotiations between the
company and the union.  If the dispute remained unresolved, it was to
be remitted to compulsory arbitration.  The company and the union
were to select and pay the arbitrator, and his decision was to be "final
and binding upon the Company, the Union, and any employee or
employees involved."

Gardner-Denver, 415 U.S. at 39-42.  In determining whether this clause precluded

the plaintiff's statutory right to a trial under Title VII, by a prior submission to final

arbitration, the Court did not specifically state that this language was not a "clear

and unmistakable" mandate to arbitrate the plaintiff's Title VII race discrimination

claim.[5]  However, in its later Penn Plaza opinion, the Court clarified that the

_____

[5]In a unanimous decision, the Court determined that the petitioner was not
precluded from asserting his independent statutory rights under Title VII, without
specifying that the agreement was not specific in its agreement to mandate
arbitration. Gardner-Denver, 415 U.S. at 59-60.  The opinion seemingly rested on
the intrinsic differences between the arbitration mechanism and litigation, to wit:

In submitting his grievance to arbitration, an employee seeks to
vindicate his contractual right under a collective-bargaining agreement.
By contrast, in filing a lawsuit under Title VII, an employee asserts
independent statutory rights accorded by Congress.  The distinctly
separate nature of these contractual and statutory rights is not
vitiated merely because both were violated as a result of the same
factual occurrence.  And certainly no inconsistency results from
permitting both rights to be enforced in their respectively appropriate
forums.

Id. at 49-50; see also Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 737
(1981) (noting that the consideration for the basis of its decision in Gardner-Denver
were that "[n]ot all disputes between an employee and his employer are suited for
binding resolution in accordance with the procedures established by collective
bargaining" and that "[w]hile courts should defer to an arbitral decision where the
employee's claim is based on rights arising out of the collective-bargaining

Gardner-Denver arbitration provision was insufficient because it "did not expressly reference the statutory claim at issue" and that the Court had "reversed the judgment on the narrow ground that the arbitration was not preclusive because the collective-bargaining agreement did not cover statutory claims." Penn Plaza, 129 S. Ct. at 1467, 1468.

In sum, then, the lesson to be learned from the Supreme Court cases is that a court must discern whether it is clear that "the collective-bargaining agreement's arbitration provision expressly covers both statutory and contractual discrimination claims." Id. at 1469. In so doing, the Court should look to whether the discrimination provision contains an express reference to the statutory claim at issue and also whether the arbitration clause is specific enough to encompass said statutory claim. Id. at 1468; Wright, 525 U.S. at 80.

Moving forward from this backdrop, the Court returns to the CBA language presently before it. Article XXV (the "Non Discrimination Clause") provides that "there should be no discrimination between employees with respect to compensation, terms and conditions of employment[,] because of race, color, religion, sex, age, national origin, marital status, disabilities, veterans status or any other protected class or protected status as defined by local Municipal, State or

_____

agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers"). In Penn Plaza, the Supreme Court later explained that it had reversed the judgment, in Gardner-Denver, "on the narrow ground that the arbitration was not preclusive because the collective-bargaining agreement did not cover statutory claims." Penn Plaza, 129 S. Ct. at 1467.

14

Federal Laws." Doc. #26-1 at 4-5 (emphasis added). Despite the fact that the antidiscrimination provision in the Ohio Revised Code (§ 4112.02), under which the Plaintiff brings suit, is not mentioned by name, the Court concludes that, in referencing "State Laws", the CBA expressly covers both statutory and contractual discrimination claims, but only with respect to compensation and terms/and conditions of employment.[6]  The Court does not read the Supreme Court opinions so expansively as to indicate that the relevant statute must be spelled out by name, but rather only that it must be clear that the Agreement pertains to statutory discrimination claims, as opposed to only contractual discrimination claims.  The present Agreement does so.

The Court next revisits the CBA's arbitration clause, which provides the mandated procedure to follow for complaints "arising out of the application or interpretation of the specific items of this Agreement."[7] Doc. #26-1 at 4 ("[T]he

---

[6]The parties dispute whether the use of the word "should", as opposed to "shall" somehow lessens the clarity of this provision.  The Court has consulted Webster's Dictionary and concludes that the definition for "should" that most aptly fits the sentence under discussion is as follows: "used in auxiliary function to express obligation, propriety, or expediency; 'tis commanded I should do so' — Shakespeare; 'this is as it should be' — H. L. Savage; 'you should brush your teeth after each meal'." http://www.merriam-webster.com/dictionary/should.  Further, the Oxford English Dictionary explains that the word "should" is the past tense of the word "shall". http://dictionary.oed.com.  Given this definitional guidance, along with the indication of obligation, within the context of the sentence ("It is the intent and purpose of the Company and the Union that there should be no discrimination . . . ."), the Court concludes that the word "should" is used synonymously with the word "shall" in the disputed provision.

[7]The Court is greatly disturbed by the Plaintiff's use of an incomplete quote from the CBA, in an attempt to persuade the Court that the arbitration provision is

following procedure is established for adjusting . . . employee complaints [arising

out of the application or interpretation of the specific items of this Agreement][.]").

The stated procedure culminates with mandatory arbitration. Id. at 5 ("If the

parties are unable to agree upon the issue or issues involved, such dispute shall

then be referred to an arbitrator.")  As previously noted, the Agreement prohibits

conduct that is discriminatory under State law (with respect to compensation and

_____

not mandatory.  In the Plaintiff's Memorandum in Opposition to the Defendant's
Motion for Summary Judgment, he asserts that "[t]he language in Article VI give[s]
the employee[s] the discretion over whether or not they want to begin the
grievance procedure or elect to use a court of law." Doc. #26 (Pl.'s Mem. Opp'n)
at 9.  In support of this assertion, the Plaintiff cites the CBA text governing the
first step of the grievance process, which he states reads as follows:

> In furtherance of such recognition by the parties, the following
> procedure is established for adjusting such employee complains [sic].
> 1. The aggrieved employee, if the employee desires, shall within three
> (3) scheduled working days of the occurrence giving rise to the
> compliant, bring such complaint. ..."

Id. (emphasis in original) (citing CBA).  In contrast, the actual language in the CBA
reads as follows:

> In furtherance of such recognition by the parties, the following
> procedure is established for adjusting such employee complaints.
> 1. The aggrieved employee, and his shop steward if the employee
> desires, shall, within three (3) scheduled working days of the
> occurrence giving rise to the compliant, bring such complaint to his
> foreman and verbally attempt to adjust the matter satisfactorily.

Doc. #26-1 (CBA) at 4 (emphasis added).  It is quite clear that the phrase "if the
employee desires" modifies the immediately preceding phrase "and his shop
steward" (which the Plaintiff omitted from his quote), thus meaning that it is
optional for an aggrieved employee to have his shop steward accompany him while
attempting to verbally adjust his complaint with his foreman, not that it is optional
that an aggrieved employee follow the outlined grievance process, as the Plaintiff
wrongfully contends with the support of his misquote.

terms/conditions of employment).  The Court concludes that the arbitration clause,

which mandates the procedure for complaints arising out of the application of the

Agreement, necessarily applies to complaints concerning a violation of the

Agreement's antidiscrimination clause.[8]  Thus, the Agreement "clearly and

unmistakably" mandates arbitration of discrimination claims (but only with respect

to compensation and terms/conditions of employment) that are actionable under

State (and other) law.  In the present case, the Plaintiff alleges discriminatory

conduct as to his compensation, the terms and conditions of his employment, and

his termination.

In sum, then the Court concludes that there exists no genuine issue of

material fact as to whether the CBA "clearly and unmistakably" mandates

arbitration of discrimination claims that are actionable under State law, but only as

to those claims with respect to compensation and terms/conditions of employment.

Therefore, the Defendant's Motion for Summary Judgment (Doc. #23) is

SUSTAINED, as to the part of the Plaintiff's Complaint that applies to claims with

respect to compensation and terms/conditions of employment, and is OVERRULED,

---

[8]The Court takes note of the fact that, in <u>Wright v. Universal Maritime
Service Corp.</u>, 525 U.S. 70, 80, 142 L. Ed. 2d 361, 119 S. Ct. 391 (1998), the
Supreme Court found a similar arbitration provision, which provided for arbitration
of "matters under dispute," to be too general, since it "could be understood to
mean matters in dispute under the contract." <u>Id.</u> at 80.  In <u>Wright</u>, however, there
was no provision that explicitly incorporated statutory antidiscrimination
requirements, so the phrase "matters under dispute under the contract" could not
have encompassed statutory discrimination claims.  In the instant case, the
discrimination clause expressly covers local municipal, state or federal
discrimination claims, thus distinguishing it from the agreement in <u>Wright</u>.

as to the part of his Complaint that applies to his termination.


III.    <u>Motion For Leave to File Identification of Lay Witnesses Out of Time and Motion to Dismiss</u>

    A.    <u>Background on Motion For Leave to File Identification of Lay Witnesses Out of Time</u>

The Plaintiff has filed a Motion For Leave to File Identification of Lay Witnesses Out of Time and has attached thereto a proposed Notice of Disclosure of Lay Witnesses. Docs. #21, #21-1.  According to the Court's Preliminary Pretrial Conference Order, identification of lay witnesses with a synopsis of their testimony was to be filed by April 10, 2009. Doc. #7 at 2.  The Defendant timely filed it its lay witness list on that date. Doc. #11.  Discovery closed on May 12, 2009. Doc. #7 at 2.  On May 26, 2009, after the Court and defense counsel advised Plaintiff's counsel (during a telephone conference call) that no such list had been filed, the Plaintiff filed the present Motion, asking for leave of Court to file its lay witness list out of time. Doc. #21.  Attached to the Motion is the proposed lay witness list, identifying 35 individuals whom the Plaintiff purportedly intends to call as witnesses. Doc. #21-1.  The amount of detail provided in the synopsis of each potential witness's testimony varies, with some being specific and some being vague.[9]  <u>See</u> <u>id.</u>

_____

[9]For example, witness Kevin Overholser's entry states that "Mr. Overholser, Union Representative, will testify to the incident when a write-up was given to Plaintiff while no write-up was given to white employees Jodi Shover, Terry Traylor and Jeff Thornburg, who were engaged in the same activity." Doc. #21-1 ¶ 1.  In

18

In the memorandum attached to said Motion, the Plaintiff asserts that the identification of his lay witnesses should come as no surprise to the Defendant, given that the witnesses "are drawn entirely from the workforce of the Defendant." Doc. #21 at 2. The Plaintiff also states that the 35 witnesses identified on his lay witness list are the same as those previously disclosed as "Individuals Likely to Have Discoverable Information," on December 15, 2008, and in response to an interrogatory from the Defendant, on May 4, 2009. Id.

The Defendant opposes the Plaintiff's Motion for several reasons. Doc. #22. Initially, the Defendant points out that the Court's General Order No. 1 provides that "[l]ay witnesses who have not been timely identified will not be permitted to testify." S.D. Ohio (W. Div.) Gen. Order No. 1 (2003) at 5. Further, the Defendant points out that although said Order does not provide for the late filing of a lay witness list, it allows for the supplementation of such list, but only upon "good cause shown" and the Plaintiff, in this case, has not given any indication that he had "good cause" for missing the Court's deadline.[10]

---

contrast, witness Greg Shirk's entry provides that he "will testify regarding the watermelon statements." Id. ¶¶ 9, 34.

[10]In pertinent part, General Order No. 1 reads as follows:

The purpose of this filing of witness lists is to permit timely completion of discovery. Supplementation of the lists after timely filing shall be only upon motion and for good cause shown, i.e., that the identity of the witness and/or the need for the witness's testimony could not have been previously determined upon the exercise of due diligence by counsel.

Finally, the Defendant points out that the Court's General Order mandates that the submitted lay witness list be a "final list"[11] and there are many indications that the list proposed to be filed by the Plaintiff is not a "final list", to wit: the sheer number of the identified potential witnesses (35); the fact that the proposed list is a basically just a duplicate of the preliminary witness list that the Plaintiff provided to the Defendant, with minor additions to the descriptions of testimony; there is no indication that the Plaintiff has done any discovery (i.e., he has taken no depositions and provided no witness statements); the synopsis of testimony is "extremely sparse" for some of the individuals; and the list does not designate the Plaintiff as a lay witness.[12] Doc. #22.

The Plaintiff having provided no response to the Defendant's Memorandum in Opposition, the Court will now turn to a review of the background on the Defendant's Motion to Dismiss, given that said Motion is somewhat related to the Plaintiff's Motion for Leave to File Identification of Lay Witnesses Out of Time.

---

S.D. Ohio (W. Div.) Gen. Order No. 1 (2003) at 6.

[11]Specifically, the Order provides that "[t]hese [lay witness] lists are not meant to be preliminary witness lists. Rather, they are to be final lists, insofar as discovery has revealed the necessity of testimony by these witnesses." S.D. Ohio (W. Div.) Gen. Order No. 1 (2003) at 6 (emphasis in original). Further, the Order advises that counsel is "to conduct their discovery early and in timely fashion in order to make the witness lists served upon opposing counsel as exact and as final as possible." Id.

[12]Not pointed out by the Defendant is the fact that there is no identifying information listed for some of the individuals, indicating that the Plaintiff did not contact these persons prior to submitting this purportedly "final" list. See Doc. #21-1 at 4.

B.    Background on Motion to Dismiss

The Defendant moves the Court to dismiss the Plaintiff's Complaint for lack

of prosecution. Doc. #28.  In its Motion, the Defendant asserts that the Plaintiff

has repeatedly failed to abide by the Orders of the Court, delaying the resolution of

this matter, inconveniencing the Court, prejudicing the Defendant and

compromising the ability of the parties to try this case on the date for which it has

been set.  Specifically, the Defendant asserts that the Plaintiff missed the Court's

deadline for the identification of lay witnesses (the subject of the aforementioned

Motion) and failed to be available for a status conference. See Not. Order, dtd.

Nov. 7, 2008 (indicating status conference set for May 19, 2009); Not. Order, dtd.

May 20, 2009 (indicating conference reset for May 21, 2009).  The Defendant

also states that the Plaintiff failed to timely communicate about, or submit a draft

of, the Joint Final Pretrial Order to the Defendant, in violation of the Court's

General Order.  When the Plaintiff emailed a draft of the same two weeks late, it

was replete with errors, thereby inhibiting the timely filing of a Joint Pretrial

Order.[13] See Doc. # 7 (Prelim. Pretrial Conf. Order) (noting Joint Final Pretrial Order

_____

[13]Specifically, the Defendant alleges that the Plaintiff's draft Final Pretrial Order

merely copies and pastes its laundry list of witnesses verbatim from
its earlier motion for leave to file a witness list out of time.  Many of
the witnesses lack complete contact information, and in fact, for a
significant number, there is absolutely no contact information given at
all.  Plaintiff's version of undisputed facts include[s] facts highly in
dispute, some even refuted by the Plaintiff at his deposition, and their

to be filed no later than Sept. 22, 2009); Doc. #29 (Def.'s Prop. Pretrial Order, filed Sept. 22, 2009); Doc. #30 (Pl.'s Prop. Pretrial Order, filed Sept. 23, 2009). In support of its Motion, the Defendant notes the following language from the Court's General Order No. 1:

> The Court wishes to emphasize that the Joint Proposed Final Pretrial Order must be <u>jointly</u> prepared; in the absence of such a Joint Proposed Final Pretrial Order, no final pretrial conference will be conducted, the trial will be continued, and counsel will be subject to sanctions, including possible dismissal for failure to prosecute, unless good cause is shown.

S.D. Ohio (W. Div.) Gen. Order No. 1 (2003) at 8 (emphasis in original).  The Plaintiff having filed no response to the Defendant's Motion, the Court will proceed with an analysis of the two Motions under consideration.


      C.    <u>Analysis of Merits of Motion For Leave to File Identification of Lay Witnesses Out of Time and Motion to Dismiss</u>

Based upon a review of the Court's docket and the preceding arguments, the Court first notes its concurrence with the justified frustration of Defense counsel. Plaintiff's counsel's refusal to adhere to Court mandated schedules, in this case, has been unprofessional, disrespectful to both the Court and opposing counsel, and verging on unethical.  As the Defendant points out, Plaintiff's counsel failed to be

---

issues of law and pending motions notably exclude their own motion to identify witnesses out of time.  Plaintiff's Exhibit list is blank.

Doc. #28 at 3.

available for a scheduled status conference with the Court, missed the deadline for filing the identification of lay witnesses, and failed to timely communicate with or submit a draft of the Joint Final Pretrial Order to the Defendant, thereby inhibiting the filing of the same.  The latter two wrongdoings were in violation of both the Court's Preliminary Pretrial Conference Order and General Order No. 1.  For neither transgression has Plaintiff's counsel offered an explanation of good cause.

It goes without saying that this conduct falls far below the expectations of this Court.  The Court would be more than justified in barring Plaintiff's lay witnesses from testifying at trial and/or sanctioning Plaintiff's counsel, even to the point of dismissing this case with prejudice.  See S.D. Ohio (W. Div.) Gen. Order No. 1 at 5 (2003) (noting that "[l]ay witnesses who have not been timely identified will not be permitted to testify"); id. at 8 (indicating that, in the absence of the filing of a Joint Proposed Pretrial Order, "counsel will be subject to sanctions, including possible dismissal for failure to prosecute, unless good cause is shown"); Fed. R. Civ. Proc. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.").  But see Mulbah v. Detroit Bd. of Educ., 261 F.3d 586, 594 (6th Cir. 2001) ("The sanction of dismissal is appropriate only if the attorney's actions amounted to failure to prosecute and no alternative sanction would protect the integrity of the pretrial process.") (quotation omitted).  The one person who would be harmed by such a decision, however, is the Plaintiff, who deserves his day in

court, <u>despite the shortcomings of his counsel</u>.

Therefore, the Court OVERRULES the Plaintiff's Motion For Leave to File Identification of Lay Witnesses Out of Time (Doc. #21), without prejudice to renewal, OVERRULES the Defendant's Motion to Dismiss (Doc. #28), and vacates the trial date.  A conference call will be set forthwith to discuss a new trial date and the manner in which the parties will proceed in pretrial matters.  Furthermore, Plaintiff's counsel is instructed to pay to the Defendant any duplicative or unnecessary costs incurred by the Defendant in trial preparation, which have been occasioned by the misconduct of Plaintiff's counsel, as set forth herein, including, <u>but not limited to</u>, the costs associated with preparing the Motion to Dismiss, defending against the Motion For Leave to File Identification of Lay Witnesses Out of Time, the costs associated with the filing of a final pre-trial order without meaningful input from the Plaintiff, and the cost of participating in a telephone conference call in which Plaintiff's counsel did not deign to participate.

Should Plaintiff's counsel fail to comply with any future Orders of the Court, the Court will consider all appropriate sanctions including dismissal of this action with prejudice.


IV.    <u>Conclusion</u>

The Plaintiff's Motion for Leave to File Identification of Lay Witnesses Out of Time (Doc. #21) is OVERRULED, without prejudice to renewal.  The Defendant's

Motion for Summary Judgment (Doc. #23) is OVERRULED, in part, and

SUSTAINED, in part. The Defendant's Motion to Dismiss (Doc. #28) is

OVERRULED.

Counsel of record will note that a telephone conference call will be initiated

by the Court to discuss a trial date and other dates leading to the resolution of this

litigation, at 8:30 a.m., on Monday, February 22, 2010. A new Rule 26(f) report

<u>must</u> be filed with this Court not later than the close of business on Friday,

February 19, 2010.


February 10, 2010


                                    /s/ Walter Herbert Rice
                                    WALTER HERBERT RICE, JUDGE
                                    UNITED STATES DISTRICT COURT


Copies to:
Counsel of record