IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LUTHER JONES, | : |
| Plaintiff, | : |
| vs. | : |
| | Case No. 3:08CV358 |
| NEENAH PAPER, LLC aka NEENAH PAPER SALES, INC. (fka FOX RIVER PAPER COMPANY), | : |
| | JUDGE WALTER HERBERT RICE |
| | : |
| Defendant. | : |

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR RECONSIDERATION (DOC. #34), REVISING THE COURT'S PREVIOUS DECISION AND ENTRY (DOC. #32), AND OVERRULING, AS MOOT, PLAINTIFF'S MOTION FOR LEAVE TO FILE IDENTIFICATION OF LAY WITNESSES OUT OF TIME (DOC. #37); TERMINATION ENTRY

The Plaintiff, Luther Jones, began his employment with Defendant, Neenah Paper, LLC ("Neenah"), in December 1997.  He worked in various capacities as a laborer in Defendant's paper mill, until his termination in March 2007.  Jones initiated this litigation, claiming that Neenah had discriminated against him on the basis of his race, in various ways during his employment and also in terminating him. Doc. #3 (Am. Compl.).  Jones brings his race discrimination claim pursuant to Ohio Revised Code § 4112.02. Id.

The parties to this litigation previously filed two Motions that are relevant to

the two Motions presently before the Court. The Plaintiff previously filed a Motion for Leave to File Identification of Lay Witnesses Out of Time (Doc. #21), which the Court subsequently overruled without prejudice to renewal (Doc. #32), and the Defendant previously filed a Motion for Summary Judgment (Doc. #23), which the Court subsequently overruled, in part, and sustained, in part (Doc. #32). After the Court had ruled on those Motions, the only part of the Plaintiff's case that remained was the part of his race discrimination claim that pertained to his termination (the Court having sustained the Motion for Summary Judgment as to the part of the race discrimination claim that pertained to "compensation and terms/conditions of employment"). Presently before the Court is the Plaintiff's renewed Motion for Leave to File Identification of Lay Witnesses Out of Time (Doc. #37) and a Motion, by the Defendant, for reconsideration of that portion of the Court's Summary Judgment decision that found in favor of the Plaintiff (the part of his race discrimination claim that pertained to his termination) (Doc. #34).

The Court will begin by restating the pertinent facts and will then analyze the Defendant's Motion for Reconsideration. If necessary, the Court will conclude with a consideration of the Plaintiff's renewed Motion for Leave to File Identification of Lay Witnesses Out of Time.

I.   Facts

Neenah employed Jones, in various laborer capacities, from 1997 to 2007.

Doc. #25 at 25, 30 (Jones Dep. at 98, 117). Jones was President of the local Union from approximately 2002-2006. Id. at 30 (Jones Dep. at 117). While employed by Neenah, he was subject to a Collective Bargaining Agreement ("CBA" or "Agreement"). Id. The first portion of the CBA that is relevant to the present dispute is Article VI, which pertains to "Grievances and Arbitration", and reads as follows:[1]

> The Union recognizes the need for uninterrupted production and the Company recognizes the need for adjusting <u>complaints arising out of the application or interpretation of the specific items of this Agreement</u>.
>
> In furtherance of such recognition by the parties, <u>the following procedure is established for adjusting such employee complaints</u>:
>
> [Sets forth the details of the 4-step procedure.]
>
> If the Mill Manager and International Union Representative are unable to reach a satisfactory settlement of the complaint, the Mill Manager shall give the Company's final answer within ten (10) working days of the fourth step meeting. The grievance may then be referred to arbitration.
>
> The parties agree to abide by the time limits prescribed herein and any extensions that are mutually agreed upon and reduced to writing.
>
> If the grievance has not been satisfactorily disposed of and is to be pursued further, the Union must serve notice upon the Company in writing within thirty (30) working days following completion of the

---

[1] Both parties have put copies of the CBA on the record, yet neither has authenticated the same (nor pointed out to the Court where they have done so). Doc. #23-3 at 21-37 (CBA placed on the record by Defendant); Doc. #26-1 (CBA placed on the record by Plaintiff). Neither party disputes the authenticity of the Agreement and both copies appear to be the same. Therefore, the Court will rely on the copy filed by the Plaintiff when ruling herein.

>grievance procedure set forth in Section 4 of this Article to request to arbitrate.  Within ten (10) working days the Company and Union shall attempt to agree upon the issue or issues involved.  <u>If the parties are unable to agree upon the issue or issues involved, such dispute shall then be referred to an arbitrator</u>. . . .

Doc. #26-1 at 4-5 (emphasis added).  Also pertinent is Article XXV, the "Non Discrimination Clause", which reads as follows:

>It is the intent and purpose of the Company and Union that there should be no discrimination between employees with respect to compensation, <u>terms and conditions of employment</u>[,] because of race, color, religion, sex, age, national origin, marital status, disabilities, veterans status or any other protected class or protected status as defined <u>by local Municipal, State or Federal Laws</u>.

<u>Id.</u> at 13 (emphasis added).

Prior to instigating the present lawsuit, Jones filed numerous grievances, alleging discrimination both during his employment and as a result of his termination.  All said grievances culminated prior to arbitration.  A summary of the only grievance that remains pertinent to the question presently before the Court follows:

- <u>March 2007</u>:  Alleges violations of <u>Article XXV</u> of the CBA, among others.  Specifically alleges <u>wrongful termination</u>.  Grievance denied through fourth step of grievance procedure. Doc. #26-3 at 10 (Grievance #3-168-3-07).

In his Amended Complaint, Jones also alleges various other incidents of racial discrimination (e.g., denial of additional training opportunities, failure to promote, failure to move to a requested shift, discriminatory pay rates), for which he did not file grievances. Doc. #3 ¶¶ 8-11.

4

II.  Motion for Reconsideration

   A.  Legal Standard for Motions for Reconsideration

The Defendant's Motion is permitted by Rule 54 of the Federal Rules of Civil Procedure, which provides in pertinent part as follows:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, cross claim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. *Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims* or the rights and liabilities of fewer than all the parties *does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.*

Fed. R. Civ. Proc. 54(b) (emphasis added); see also Rodriguez v. Tennessee Laborers Health & Welfare Fund, 2004 U.S. App. LEXIS 2067, *26, 89 Fed. Appx. 949 (6th Cir. Feb. 6, 2004) (noting that Rule 54(b) authorizes district courts "to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment").  Since this Court has not adjudicated all of the Plaintiff's claims, the Defendant's request for reconsideration is governed by the above, emphasized sentence of Rule 54(b).  In Louisville/Jefferson County Metro Government v. Hotels.com, L.P., the Sixth Circuit noted that "courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Louisville/Jefferson County Metro Gov'n, 590 F.3d

5

381, 389 (6th Cir. 2009) (quoting Rodriguez, 89 Fed. Appx. at 959); accord Official Comm. of Unsecured Creds. v. Coopers & Lybrand, LLC, 322 F.3d 147, 167 (2d Cir. 2003).

### B. Summary Judgment Standard

Given that the Court will be reconsidering its previous summary judgment decision, it will reiterate the standard that guides its decisions on the same. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous

6

allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255.  If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller &

Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

    C.    <u>Reconsideration of Summary Judgment Decision</u>

In the Court's previous decision on the Defendant's Motion for Summary Judgment, it concluded that there existed no genuine issue of material fact as to whether the CBA "clearly and unmistakably" mandates arbitration of discrimination claims that are actionable under State law, but only as to those claims with respect

8

to "compensation and terms/conditions of employment". Doc. #32 at 17.  It then determined that summary judgment in favor of the Defendant was warranted, as to that part of the Plaintiff's discrimination claim that asserted discrimination with respect to his "compensation and terms/conditions of employment," but not as to that part of his claim that asserted discrimination with respect to his "termination". Id. at 17-18.  The Defendant now argues that a termination is a "term or condition of employment," a result contrary to that reached by the Court.  The Court will begin its analysis by summarizing the parties' arguments and then turn to an application of the law to the facts.

       1.     Parties' Positions

As indicated, the Defendant asks the Court to reconsider its Decision, by asserting that a "termination" is a "term or condition of employment", as that phrase is used in the CBA. Doc. #34-1.  In support of its contention, the Defendant advances the following four arguments:  (1) the law and prevailing practice governing the formation of collective bargaining agreements contemplate that such agreements cover the terms and conditions of employment, including terminations; (2) in the context of employment discrimination and retaliation law, the phrase "terms and conditions of employment" is commonly used to include terminations; (3) in the present case, the Plaintiff filed a grievance related to his termination, under the terms of the CBA in question; and (4) the Court's Decision finds that the

CBA "prohibits conduct that is discriminatory under state law," which must implicitly mean that it covers an allegedly discriminatory termination.[2] Id.

The Plaintiff presents two arguments in response. The first seems to be a suggestion that the case law relied upon by the Defendant is no longer valid given the Supreme Court's recent decision 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456, 1474, 173 L. Ed. 2d 398 (2009).[3] Doc. #36. Secondly, the Plaintiff argues that an affidavit by the Union President stating that the Plaintiff threatened a law suit after his termination supposedly demonstrates that the Union President knew that such a lawsuit was not precluded by the CBA.[4] Id.

---

[2]The Defendant also points to the Declaration of Mike McAdams, who was the Union President succeeding the Plaintiff, in support of its argument that the Plaintiff had a pattern of abusing the grievance process. Doc. #34-1 at 6-7. However, the Court finds the allegations pertaining to the Plaintiff's abuse of the grievance process to be irrelevant to the question of whether the CBA's arbitration provisions applied to terminations.

[3]On this point, the Plaintiff's memorandum reads as follow: "If Penn Plaza closes the federal courts to Union members whose CBA has binding arbitration, what is the continuing relevance of Federal case law language to determinations of the meaning of terms in a CBA such as the one at Neenah Paper?" Doc. #36 at 2. If the Plaintiff is proposing that the Supreme Court intended to overrule all prior federal case law regarding interpretations of collective bargaining agreements, such a proposition is, of course, wholly without merit.

[4]The Plaintiff also seems to be asserting that the absence of evidence that there was information at the place of employment about discrimination actions somehow supports his position. Doc. #36 at 3. The Court finds this argument unclear and unsupported by either facts or the law and, thus, will not consider it when ruling herein.

      2.    <u>Analysis</u>

Neither party mentions Rule 54(b), or any other justification for the Court to rule on the present Motion for reconsideration. Given that the Defendant has not pointed to either an intervening change of controlling law or new evidence in support of its position, the Court assumes it is proceeding under the third means of justification for reconsidering an interlocutory order, provided by Rule 54(b), "a need to correct a clear error or prevent manifest injustice." <u>Louisville/Jefferson County Metro Gov'n</u>, 590 F.3d 381, 389 (6th Cir. 2009) (quoting <u>Rodriguez</u>, 89 Fed. Appx. at 959). It is axiomatic that an error in discerning the applicable case law on a given point is "a clear error" and that correction of same is necessary to "prevent manifest injustice." <u>Id.</u> Thus, the Court must discern whether there is a need to correct a clear error or prevent manifest injustice, with regard to its previous decision, on the question of whether the CBA "clearly and unmistakably" mandates arbitration of discrimination claims that pertain to <u>terminations</u>.

As the Court previously noted, the Supreme Court recently resolved the question of whether a union may waive a covered employee's right to a judicial forum for resolution of certain federal statutory claims, which had been left open by earlier Supreme Court decisions. In <u>14 Penn Plaza LLC v. Pyett</u>, 129 S. Ct. 1456, 1474, 173 L. Ed. 2d 398 (2009), the Supreme Court held that a union may bind a covered employee to arbitration for a statutory antidiscrimination claim, as long as the arbitration clause in question "clearly and unmistakably" mandates

arbitration of said claim.  Therefore, the Court must now reconsider whether the terms of the CBA in question "clearly and unmistakably" require arbitration of the Plaintiff's discriminatory termination claim.  In so doing, the Court notes the Sixth Circuit's instruction that "when interpreting a collective bargaining agreement, a court must start with the 'explicit language'" and that "[g]eneral principles of contract interpretation should guide a district court's interpretation of the explicit language." Tackett v. M&G Polymers, USA, LLC, 561 F.3d 478, 489 (6th Cir. 2009) (citing Int'l Union v. Yard-Man, 716 F.2d 1476, 1479 (6th Cir. 1983)).  Further, Ohio courts have found that "when construing a contract, courts are free to adopt a reasonable construction which the parties themselves, by their actions, have placed upon it." Downtown Associates, Ltd. v. Burrows Bros. Co., 34 Ohio App. 3d 296, 300, 518 N.E.2d 564 (Ohio 8th App. Dist. 1986).

In considering the pertinent provisions of the subject agreement, the Court finds both the Defendant's second argument (pertaining to the common use of the phrase "terms and conditions of employment" to include terminations, in the context of employment discrimination and retaliation cases) and third argument (regarding the Plaintiff filing a grievance related to his termination, under the terms of the CBA in question) to be convincing.

As to the Defendant's second argument, the Court notes agreement with the fact that the Sixth Circuit has used the phrase "terms and conditions of employment" to encompass terminations, in discrimination claims. E.g., Hollins v.

Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999) (noting that a "materially adverse change in the terms and conditions of employment" might be indicated by a "termination of employment"); Kocsis v. Multi-Care Mgmt., 97 F.3d 876, 886 (6th Cir. 1996) (same).  Further, with regard to the Defendant's third argument, the CBA sets forth "grievance and arbitration" procedures for employees to follow for all "complaints arising out of the application or interpretation of the specific items of this Agreement." Doc. #26-1 at 4.  One of the specific items contained in the Agreement is its prohibition against discrimination with respect to "terms and conditions" of employment, in Article XXV. Id. at 13.  While the Agreement does not explicitly state whether a termination is considered a "term or condition of employment", the parties' actions in adhering to the Agreement in the aftermath of the Plaintiff's termination sheds light on their understanding of the definition of those words.  As previously noted, the Plaintiff filed a grievance alleging discriminatory termination, in violation of Article XXV, thereby demonstrating that it was his understanding that such a matter was grievable. Doc. #26-3 at 10.  Further, the Union and employer processed the grievance through the fourth step of the grievance process, thereby demonstrating that the Union and employer considered the discriminatory termination claim grievable. Id.  In accordance with the terms of the CBA, in order for a charge of discrimination to be grievable, it necessarily has to be based on a "term or condition of employment".  Therefore, the parties' conduct, along with the explicit terms of the agreement, indicate that

13

the CBA "clearly and unmistakably" provides that a discriminatory termination is a "term or condition of employment", which is subject to the "grievance and arbitration" procedures mandated in the Agreement.[5]

In sum, the Court concludes that in order to correct a clear error or prevent manifest injustice, it must revise its previous Decision (Doc. #32) and, therefore, concludes that there exists no genuine issue of material fact as to whether the CBA "clearly and unmistakably" mandates arbitration of discrimination claims that are actionable under State law, as to those claims with respect to compensation and terms/conditions of employment, <u>which includes claims for discriminatory terminations</u>. Therefore, the Defendant's Motion for Reconsideration (Doc. #34) is SUSTAINED.[6]

---

[5]Given that the Court finds the Defendant's second and third arguments convincing (regarding courts' use of the phrase "terms and conditions of employment" to include terminations, in discrimination claims, and the parties' actions in filing and processing the grievance related to the termination, under the terms of the CBA in question), it need not consider the other two arguments advanced by the Defendant, in support of its assertion that the Court's previous decision was in error.

[6]Although this Court is comfortable in reconsidering its earlier decision, pursuant to the Defendant's second and third Arguments set forth above, the first and fourth such arguments seemingly have merit, as well. Moreover, the express language of the relevant portion of the CBA, itself, would appear to direct the result reached herein, in that a termination, considered not in a vacuum, but, rather, as the result of a long standing course of discriminatory conduct by the Defendant, is but the culmination of that discriminatory conduct and it would be anomalous to allow the grieving of and eventual arbitration of that underlying conduct, while excluding the result of said conduct, the termination, therefrom.

III.  Motion for Leave to File Identification of Lay Witnesses Out of Time

The Plaintiff has renewed his Motion for Leave to File Identification of Lay Witnesses Out of Time (Doc. #37). Given the Court's decision on the Defendant's Motion for Reconsideration, as set forth above, which disposes of the Plaintiff's sole remaining claim, the Court OVERRULES, as moot, the Motion for Leave to File Identification of Lay Witnesses Out of Time (Doc. #37).

IV.  Conclusion

The Defendant's Motion for Reconsideration (Doc. #32) is SUSTAINED. All of the Plaintiff's claims having now been disposed of, the Court OVERRULES, as moot, the Plaintiff's Motion for Leave to File Identification of Lay Witnesses Out of Time (Doc. #37).

Judgment is to be entered on behalf of the Defendant and against the Plaintiff.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

August 5, 2010

       /s/ Walter Herbert Rice
     WALTER HERBERT RICE, JUDGE
     UNITED STATES DISTRICT COURT

Copies to:
Counsel of record